at all. Thank you. Mr. Rowe. We're prepared to hear from you again. Yes, I'm back. Your Honor. Represented Kody Butterfield, also a transgender inmate. This prisoner in custody in South Dakota  very similar claims. I want to begin a little differently, though, because as Judge Strauss mentioned, you have granted my motion to enlarge the record in this case to include the report of Cynthia Osborne. South Dakota brought in an expert from Johns Hopkins to help them with transgender inmates in custody. And Cynthia Osborne went out to Sioux Falls and interviewed people, including Katie Butterfield. And she said that this was one of the more severe cases she had seen and recommended hormones and feminizing accommodations and put all that in a 27 single spaced report, 27 pages, and gave it to the South Dakota officials. That was in August of 2018. Meanwhile, Kody Butterfield was filing grievances asking for the same thing and losing them all. And she filed in court and her first case was dismissed. She filed again. That case was dismissed. There was never any service. I'm not faulting Judge Lange for not knowing about the Osborne report. I didn't know about the Osborne report when I did the briefing. But I did ask the South Dakota penitentiary to send me the medical file on the inmate. That's what I found in the Osborne report. They had had it for over a year. I don't use the word very often because I think it's overused. But I submit that's outrageous that they were turning down her grievances when their own expert was telling them she should get what she's asking for. Let me ask you this, counsel. So I take it you want us to consider the Osborne report as sort of my introductory question in this appeal. And of course, I'll give the opposing counsel a chance to answer that as well. Well, there is no opposing counsel because no one has served. Absolutely right. You're absolutely right. I stand corrected. But I think you would like us to consider the Osborne report. I would like you to consider it as part of the reason to remand this case. I think it would be better to let the district judge assess its merit in the first instance with opposing counsel on the case. I think it's a lot to expect the Court of Appeals to absorb and apply, to be honest with you. So, you know, I've read this. It's a very thorough report. As you said, it's 29 pages and it goes through everything. But then I want to ask you about page 24 of the report. And it says it is important to recognize that while I am recommending hormonal treatment, this inmate would not likely be assessed as an appropriate candidate for hormonal treatment were he to present at a credible gender clinic in the community. And then on page 25, it suggests that the reason why this particular expert says that Butterfield should receive hormone therapy is because we need to flex the standards for receipt of hormone therapy. The reason why I asked you that ahead of time is I think it's a pretty mixed bag. Yes, it says this expert would give hormone therapy, but it suggests in very strong and direct terms that if this inmate were in the free world, this inmate would not qualify for hormone therapy. It says both things. It's classic Cynthia Osborne, to be honest with you. I don't think that's the test, however, on dismissing sui sponte. I think that the case should, I don't believe Judge Lang would have dismissed this case if he had seen the report. I believe he'd want to hear more. And I think that ought to be the way the court looks at it. And that's what I would submit should be the standard here. It's a kind of a summary judgment each sort of issue, not a pleadings issue. And I'd like to think that the attorney general of South Dakota would not have kept this hidden had they been served. So I think that it would be fair to say that Judge Lang got a false start in this case by not having the benefit of this. And it isn't his fault, but it's what is possible under this open ended reading of Reed. That something that would be sort of a travesty if it weren't unearthed can slip between the cracks. I had asked the court to consolidate the two cases. I don't what I really wanted is what happened, which is to present them to the same panel on the same day. So whether you formally consolidate them or not, I got what I wanted. Well, I just want to ask you, we've got this Osborne report. I understand you want us to send it back. But one of the things we have here in the complaint itself, too, that's different from Prouse. So it's kind of, you know, to refer back to Prouse. Prouse has actually a little bit more in the complaint, but no Osborne report. This case has less in the complaint, but has the Osborne report. And here the complaint is absolutely crystal clear in the complainant's own words that there was counseling given. It's in the it's in the face of the complaint. So is that I mean, is that enough now? Now we're in the I simply disagree with what the what the the Board of Corrections or South Dakota ended up doing. Aren't we? Well, no, I don't think counseling alone is enough. Once there's been a period of counseling, I think the the standard of care, which is pretty well accepted, is that hormones follow counseling. And they need to be considered. And there was no policy to consider them. I think that we had in Prouse a. Well, we have in both cases a diagnosis. In one case, we had a policy, but no plan. In this case, we have a plan, but no policy. And you really should have all three in both cases. And that's what I'd like to see the court hold. These cases are going to continue to be filed pro se in the district courts. And it shouldn't be. There shouldn't be such a wide variation in the way Reed is interpreted. Let the states come forward. Let the district judges get a little more before they dismiss. And. Some of them are doing that already in Nebraska. Judge Schreier is doing that in South Dakota, but Judge Lang didn't. It really varies with the district court judges. And that's why I wanted them both examples to come before you. I don't mean to be impertinent, but I hope that that is helpful. To see what different judges did. What would you suggest that we're doing? You're saying remanded, but on what sort of we've taken this supplement and the Osborne report that the district court had didn't have. I'm sorry. What would that remand order look like? How would that read? Well. I think the remand would be for further proceedings. It would vacate the. The dismissal. And allow the amendment of complaint. As simple as that sort of in light of additional information that's come to the hands of the originally pro se litigant remand for further proceedings. As the district court deems appropriate. I think that would be enough. If you wanted to write more. Obviously, you could, but that would satisfy the appeal. The equal protection claim is very similar to the one in Prowse. And. In case it comes up as you're writing, I just want to mention. They came up in a mood that the dismissal in this case was without prejudice, unlike Prowse. But I don't think that should make any difference because. If she filed again, she would be risking a third strike. And she shouldn't have to risk a third strike to get this heard in light of this kind of proffer. Well, this this case is also interesting. The Butterfield one, because I think if I recall correctly, and I was more focused on the deliberate indifference, but I think this one. The equal protection claim, I believe, is unequivocally or unambiguously pleaded in this one. And I'm not sure it's unambiguously pleaded in the Prowse case and the Prowse case. There's no sort of unequal treatment alleged. But here there is. And so these cases, this one's interesting in terms of in terms of the equal protection argument. What is it similar here? Because here you have no pot, no committee. Right. It's the same as the one in the Prowse case. So maybe the argument is actually stronger on the equal protection claim in Prowse. Or am I wrong about that? Well, I think it's strong in both of them. What I would say here, it's pled more explicitly, although she does use the word equal protection twice in Prowse at pages 84 and 91. But in in this case, in Butterfield, I think the district judge misconstrued equal protection. He analyzed it in terms of verbal harassment. And this court's cases on that subject. And those are really Eighth Amendment cases. And I don't think that that was the correct standard. I think the correct standard is the one I enunciated in my earlier argument. It's either discrete group or it's stereotyping. And verbal harassment goes to whether the conditions are cruel and unusual. And it's a tougher standard, frankly. And it was probably a misapplication there. At least I would argue it was. And so we asked for a remand in this case also. If there are no other questions, I'm going to stop talking. I see no other questions. We thank you for your argument. And we will take this and the other case you presented us with under advisement.